## Samuel P. Hodgen
### *v.*
### Robert B. Latham.

1. Payment — *what constitutes*. The receipt by a creditor from his debtor of a draft drawn by a third person, under an arrangement that it will be taken as payment if it can be made available, will not, in the event of the dishonor of the draft, operate as payment, although the debtor had procured the draft from his bankers, by drawing his check on them for that amount, and for which his bankers had debited him on the settlement of their accounts.

2. Witness — *interest of, as affecting competency*. In a suit brought to recover the price of a quantity of corn, the witness who had been, before the sale to the defendant, the owner of the corn, and had sold it to the plaintiff under an agreement that he was to be credited with the sum for which the plaintiff sold it, and had been so credited, was *held* not thereby interested in the event of the suit.

Appeal from the Circuit Court of Logan county; the Hon. John M. Scott, Judge, presiding.

This was an action of assumpsit, brought by the appellee and against the appellant, in the Logan county Circuit Court.

Upon the trial, it appeared that, in September, 1860, one William Ryan purchased of Wyatt and Latham, the appellee, a quantity of corn; that, in May, 1861, Ryan still having the corn on hand, and Latham pressing payment, the parties, Latham and Ryan, went to Hodgen, the appellant, who, after some negotiation, agreed to take the corn off Ryan's hands, and pay Latham

for it. The corn came to about $1,128. At the time this arrangement was made, Ryan had paid Latham, on account of the corn, $350, which amount was to be paid back to him by Latham, and $86 of which sum had been paid back. Ryan was sworn as a witness for the plaintiff below, the defendant objecting to his competency, on the ground of interest.

John Wyatt was also sworn and examined as a witness for the appellee, by whom, substantially, the same facts were proven, as by the witness Ryan. From Wyatt's testimony on the cross-examination it also appeared, that he sold the corn to Latham, and was to get credit with him for the amount which he got for the corn; that he owed Latham when he sold him the corn, for which Latham gave him credit, although he had never seen the amount credited on any book of Latham's. The defendant below objected to the testimony of the witness, on the ground of interest; which objection the court overruled, and the defendant excepted.

The delivery of the corn to Hodgen was proved, and the appellee then produced a draft drawn by Dustin & Music, bankers, on Hoffman & Gelpcke, Chicago, for the sum of $338.88, dated May 16, 1861, and payable to the order of the appellee. This draft the appellee offered to cancel or deliver up to the appellant.

It appeared that the appellant, for the purpose of paying the appellee the sum of $1,000, on account of the corn, gave to the appellee a check on Dustin & Music for the sum of $338.88, which amount the appellee desired to use in payment of an execution against him. The parties went together to the banking house of Dustin & Music, and upon the representation of the appellant, that he had deposited to their credit with Hoffman & Gelpcke, the sum of $1,000, and for the appellant's accommodation Dustin & Music gave to him the draft in question, for which the appellant gave to them his check, which had previously been drawn, and also drew another for the balance of the $1,000, the amount of which Latham never drew from the bank. Latham agreed to accept the draft, provided he could use it in satisfaction of the execution; and also agreed to receive for the

balance of the $1,000, such currency as he could use in the payment of a debt at Springfield. The draft was delivered by the appellant to the officer holding the execution, who received it conditional upon its being satisfactory, and it was returned protested.

The same day one of the firm of Dustin & Music started for Chicago, and it was agreed between all the parties that he should send the balance of the $1,000 in currency to Springfield, for the appellee, the appellee agreeing to receive such currency as he could use there. On reaching Chicago he found, as he says, that "the bottom had fallen out of Illinois currency," and he consequently forwarded none to Springfield, as Latham had agreed to receive only such currency as he could use.

It also appeared, that in closing up Hodgen's account, Dustin & Music charged him with the two checks amounting to $1,000, and credited him with that sum deposited for them with Hoffman & Gelpcke. The appellant tendered to appellee the sum of $128.25 in gold and silver coin, before the commencement of suit.

The court gave to the jury the following instructions for the plaintiff:

If the jury believe from the evidence, that the plaintiff sold to the defendant corn, they will find for plaintiff, unless they believe further, from the evidence, that the defendant has paid for the same.

If the jury believe from the evidence, that the defendant gave a draft or drafts to the plaintiff, or to any one for him, in part or full payment for said corn, and that said draft or drafts were accepted by the plaintiff upon the condition that he could use it or them to pay his debts, then they will find for plaintiff, unless they believe the plaintiff did or could have used said draft or drafts in the payment of his debts; if they further believe that said draft or drafts have been returned or offered to be returned to defendant, and that plaintiff did not receive any money on such draft or drafts.

And refused to give the following instructions requested by the defendant:

The court instructs the jury, that if they believe from the

evidence, that Hodgen had deposited money with Hoffman & Gelpcke, to Dustin & Music's credit, that afterwards Hodgen gave Latham checks on Dustin & Music, that these checks went into the bank of Dustin & Music and were charged to Hodgen, then Hodgen should be credited with the amount of said checks in this action.

That if the jury believe from the evidence, that when Latham took the two checks from Hodgen, on Dustin & Music, as payment of $1,000, if he could get the right kind of currency, and Latham, with this agreement, took the checks, passed them to Dustin & Music, and the checks were charged to Hodgen, that is a payment by Hodgen to Latham of the amount in said checks.

That if the jury believe from the evidence, that Hodgen deposited with Hoffman & Gelpcke $1,000, to the credit of Dustin & Music, and Dustin & Music gave Hodgen credit for the amount so deposited, then that is a deposit with Dustin & Music, by Hodgen.

The jury returned a verdict for the plaintiff; motion was made for a new trial, and in arrest of judgment, which was refused, and a judgment entered upon the verdict, from which the defendant appeals to this court, and assigns for error: *First*, that Wyatt's testimony was allowed to go to the jury; *Second*, that the plaintiff, Latham, was not required to surrender at the trial the checks given in part payment of the corn; *Third*, the refusing of the instructions asked by defendant; *Fourth*, the giving of the instructions asked by plaintiff; and *Fifth*, the refusing of a new trial.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an action of assumpsit for a quantity of corn sold and delivered, and verdict and judgment for the plaintiff. The pleas were, the general issue, payment and tender of part. A motion for a new trial and in arrest of judgment was overruled, an appeal taken and the following errors assigned: First. In allowing Wyatt's testimony to go to the jury. Second. In not requiring plaintiff Latham to surrender at the trial certain

checks given in part payment of the corn. Third. In refusing the instructions asked by defendant. Fourth. In giving the instructions asked by plaintiff. And fifth. In refusing a new trial.

It was objected to Wyatt's testimony that he was an interested witness. Although he was at one time the owner of the corn, and sold it to Latham, and for the value of which Latham was to give him a credit on his indebtedness to him, he was not thereby interested in the event of the suit. It made no difference to him how the verdict might go, Latham was bound to give him the credit. In fact, Latham had given him credit for it as Wyatt states. We cannot perceive in what respect he was interested so as to exclude his evidence. The price of the corn was established by the testimony of Ryan.

Upon the second point it is very evident the arrangement made by the defendant through the banking house of Dustin & Music, by which to pay the plaintiff for the corn, was an arrangement in which the defendant was the active participant, the plaintiff being entirely passive, only desirous of procuring such funds from the defendant, by any arrangement he might make, as would pay his own debts. This very check or draft for three hundred and thirty-eight $\frac{38}{100}$ dollars, was taken by the defendant himself to Lacy, to pay a debt plaintiff owed Lacy's client, and was accepted only on the condition that it could be applied in that way. It could not be so applied, and was delivered up on the trial to be canceled. The whole arrangement about the drafts was made by the defendant and for his accommodation, and proved fruitless for the purposes intended. It is very certain plaintiff has not been paid for the corn, nor, in our judgment, does he appear to have done any act or entered into any arrangement which, in law, can or ought to preclude him from recovering the price agreed. The defendant was at liberty to settle his bank account with Dustin & Music as he pleased, without prejudicing the plaintiff's rights.

As to the first instruction asked by defendant, and refused, we think it was correctly disposed of by the court, because it does not follow that the amount of the checks should be charged

against the plaintiff if they were charged against the defendant at the banking house, as it is not apparent in any part of the testimony that the plaintiff has ever had the benefit of them or any credit for them, or that they ever came to his use. The draft for $338.88 was brought to Lacy by Hodgen himself, he well knowing the understanding and arrangement about them. And so of the second refused instruction, there is no evidence that plaintiff took the checks at all for any purpose. The arrangement about them was made and consummated with defendant and the bankers, and solely for his accommodation, the plaintiff to have the benefit of them, if they could be made available, and not to be held responsible otherwise. We cannot perceive the relation the third instruction bears to the case, so as to affect the plaintiff. If defendant has these deposits with these banking houses, he can appropriate them.

The instructions given by the court on behalf of the plaintiff were such as the case required, and we approve them. The whole evidence in the case fully supports the verdict, and a new trial was properly refused. The judgment must be affirmed.

*Judgment affirmed.*